LOGUE, J.
Marie E. Menendez sued West Gables Rehabilitation Hospital, LLC after she was injured while another person received gait training at the Hospital. After the depositions of the witnesses were taken, the Hospital moved for summary judgment. The trial court granted the motion. Menendez appealed. Because Menendez’s theories of liability depend upon the application of the “rescue doctrine,” and the rescue doctrine was not pled or argued to the trial court below, we affirm.
*1179 AMENDED COMPLAINT AND PROCEDURAL BACKGROUND
In her amended complaint, Menendez alleged that she was an invitee at the Hospital when employees of the Hospital “were in the process of gait training patients in the hallway. As one of the patients was being gait trained, said patient began to fall and in the process of the fall, caused Plaintiff, Marie E. Menendez, to fall and sustain injury.” In Count I, Men-endez alleged that the Hospital violated its duties “to warn of a dangerous condition of which it knew or should have known because it existed for a sufficient length of time before the accident” and “to keep the subject premises in a reasonably safe condition for its invitees” because it “failed to keep the hallway safe for invitees who may be in the area when the gait training is being performed by inexperienced therapists.” Menendez added that “said dangerous and negligent conditions were not apparent to Plaintiff, Marie E. Menendez.”
In Count II, Menendez alleged that the Hospital violated its “duty to perform the gait training in its hallways in a reasonably safe manner.” She further alleged that “[d]ue to the inexperience, negligent and unsafe gait training by the employee, servant, agent and/or apparent agent of Defendant, the patient began to fall and in the process of falling caused injury to Plaintiff, Marie E. Menendez.” Nowhere does the amended complaint plead the elements of the rescue doctrine or refer to a rescue.
After depositions were taken, the Hospital filed its motion for final summary judgment which the trial court granted. This appeal followed.
FACTS REFLECTED IN THE DEPOSITIONS
The depositions filed in support of the motion for summary judgment, even when viewed in a light most favorable to Menendez, tell a story at odds with the allegations in the amended complaint. According to the uncontradicted deposition testimony, the patient who fell while undergoing gaiting training was Menen-dez’s mother. In 2007, Menendez’s mother suffered a stroke. As a result, among other things, she lost the ability to walk. She was initially treated at another facility, where she first received gait training — physical therapy to help her regain the ability to walk. Later, she began to receive outpatient gait training at the Hospital.
The gait training for Menendez’s mother at the Hospital was conducted in the Hospital’s physical therapy center, not in a hallway. On the day of the accident, the mother first practiced walking using the parallel bars. She next began practicing walking with a hemi-walker in the therapy room. A hemi-walker has four legs and provides a very stable brace at hip-level. It is designed to be used on the side of the body, like a cane. The training involved the mother moving the hemi-walker forward on her left side and then stepping beside it.
The undisputed evidence indicates that the risk of falling is always present during gait training. For this reason, the patient is fitted with a gait belt, which is held by the therapist. The gait belt allows the therapist to either prevent or control a fall, depending on the circumstances. At the time of the accident giving rise to this lawsuit, the therapist was on the mother’s left side, holding the gait belt with both hands.
Menendez made a point of being present at her mother’s gait training sessions at both hospitals. Although already permanently disabled herself due to a neck injury resulting from an unrelated accident at work, Menendez voluntarily assisted in the therapy. On the day of the accident, she *1180 was stationed behind her mother and the physical therapist, guiding a wheelchair immediately behind her mother, in case her mother wanted to sit down. Menen-dez testified that she was fully aware of the risk that her mother could fall during gait training.
On the fourth step with the hemi-walker, the mother began to collapse to her right side. When the mother began to fall towards the right, the therapist had both hands on the gait belt and used it to attempt to control the fall. As her mother fell, Menendez threw herself from the safety of her location behind the wheelchair to cushion her mother’s fall. Both her mother and the wheelchair fell on top of Menendez. As a result, Menendez sustained injuries to the middle of her back.
ANALYSIS
A. Summary Judgment Standard
“Summary judgment is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings.” The Florida Bar v. Greene, 926 So.2d 1195, 1200 (Fla.2006). It is proper only if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c). The granting of summary judgment presents a pure issue of law that is reviewed by the District Court of Appeal de novo. Greene, 926 So.2d at 1200.
Courts must be particularly restrained in granting summary judgment in negligence cases. “In a negligence action, whether a defendant exercised reasonable care under a given set of facts is generally an issue for the jury to decide.” L.A. Fitness Int’l, LLC v. Mayer, 980 So.2d 550, 557 (Fla. 4th DCA 2008). Nevertheless, “[wjhile issues of negligence and ... [proximate] cause are ordinarily questions for the jury if reasonable men can arrive at different conclusions, they become questions of law if the facts point to but one possible conclusion.” Dampier v. Morgan Tire & Auto, LLC, 82 So.3d 204, 206 (Fla. 5th DCA 2012).
B. The Nature of Menendez’s Claims
Menendez’s complaint presents two theories of liability: premises liability and physical therapy malpractice.[1] Under either theory, based upon the facts as revealed in the depositions, duty and proximate cause cannot be established except by the application of the rescue doctrine, which was not pled or argued below.
In this regard, the uncontroverted testimony of all witnesses, including Menendez herself, was that she was stationed at a safe distance behind a wheelchair at the moment that her mother began to fall. From this position of safety, she — in her own words — “threw” herself towards her mother. It was Menendez’s action in leaving her position of safety which subjected her to potential injury.
“While commendable, Menendez’s decision to leave the safety of her position behind the wheelchair would normally constitute an independent, intervening cause of her injury. See Goldberg v. Fla. Power & Light Co., 899 So.2d 1105, 1116 (Fla.2005) (“A negligent actor ... is not liable for damages suffered by an injured party when some separate force or action is the active and efficient intervening cause of the injury.”) (internal quotation and citation omitted). Menendez’s decision to leave a position of safety would constitute an intervening cause of her injury because *1181 Menendez’s action “supersedes the prior wrong as the proximate cause of the injury by breaking the sequence between the pri- or wrong and the injury.” Id. Florida courts have held that proximate cause can be determined as a matter of law, and summary judgment is appropriate, when the undisputed record reveals such an intervening cause. Ruiz v. Westbrooke Lake Homes, Inc., 559 So.2d 1172, 1174 (Fla. 3d DCA 1990) (“The question of proximate cause is one for the court where there is an active and efficient intervening cause.”) (citation omitted).
C. The Rescue Doctrine
On appeal, for the first time, Menendez argues that this problem of proximate causation can be overcome by application of the rescue doctrine. This doctrine includes three elements that must be proven by a plaintiff: (1) the defendant was negligent; (2) as a result of the defendant’s negligence, the person (or property) to be rescued was in imminent peril; and (3) the rescuer acted reasonably under the circumstances. Reeves v. N. Broward Hosp. Dist., 821 So.2d 319, 321 (Fla. 4th DCA 2002). The basic precept of this doctrine “is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.” N.H. Ins. Co. v. Oliver, 730 So.2d 700, 702 (Fla. 4th DCA 1999).
In making this argument, Menendez directs our attention to Reeves. In Reeves, the court held that summary judgment was inappropriate because a material issue of fact existed under the rescue doctrine, where a visiting nurse injured herself in the course of catching a patient rolling off a bed, after the guardrail had not been put into the upright position. 821 So.2d at 321-22. The plaintiff in Reeves pled the rescue doctrine in her complaint, and thus the doctrine had been presented to the trial court in an attempt to overcome summary judgment. Id. 320-21.
Menendez, on the other hand, never pled or otherwise invoked the rescue doctrine below as a basis for imposing liability on the Hospital. Her complaint, for example, failed to allege that she sought to rescue her falling mother, but rather, as previously discussed, presented an account in which she was unwittingly walking in a hospital hallway when she was surprised and knocked over by an unknown patient falling during gait training. Cf. Zwinge v. Hettinger, 530 So.2d 318, 323 (Fla. 2d DCA 1988) (“We further observe that Zwinge pled the rescue doctrine in his complaint.”). Menendez also failed to argue the rescue doctrine below in an attempt to overcome summary judgment.
We therefore do not address whether the application of the rescue doctrine might have allowed Menendez’s claim to survive summary judgment.[2] We are foreclosed from considering the rescue doctrine because it was never presented to the trial court. Sunset Harbour Condo. Ass’n v. Robbins, 914 So.2d 925, 928 (Fla.2005) (“In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”) (citation omitted); Bus. Success Grp., Inc. v. Argus Trade Realty Inv., Inc., 898 So.2d 970, 972 (Fla. 3d DCA *1182 2005) (“It is elementary that before a trial judge will be held in error, [she] must be presented with an opportunity to rule on the matter.”).
CONCLUSION
Because Menendez failed to plead or otherwise present the rescue doctrine in the proceedings below, she cannot be heard to argue it on appeal.
Affirmed.
LAGOA, J., concurs.

. Although Count II is presented as one for "negligence,” the only negligence alleged was that the physical therapy was conducted in a negligent manner.

. "[I]f it is not necessary to decide more, it is necessary not to decide more.” PDK Labs., Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J. concurring) (recognizing the cardinal principle of judicial restraint).